### HERMAN STALL v. JOHN M. FULTON AND SUSAN HIS WIFE.

1. Under the 3d section of the act of March, 1852, *Nix. Dig.* 503, for the better securing the property of married women, a married woman can receive to her sole use a deed for lands for a term of years.
2. When such a deed expresses on its face that the consideration was paid by the wife, the presumption is that the consideration was her own money.
3. The creditors of the husband, under judgment and execution against him upon a cause of action arising anterior to the deed, cannot get a title at law, as against the wife, so as to maintain ejectment against the husband and wife, nor turn her out of possession. The whole legal title remains in the wife by force of the statute, even if the consideration money of the deed was the property of the husband.
4. The earnings of the wife, upon express promises to pay her, belong to

Stall v. Fulton.

her, and not to her husband, until he does some act with intent to reduce them into possession ; and if he dies first, they survive to the wife ; and if with such proceeds she buys land, and the deed is made to her before the conversion by the husband, the land belongs to her and cannot be seized and sold by his creditors under judgments against him.

5. The husband is not obliged, nor is he guilty of any fraud against creditors, if he does not convert to his or their use the earnings of the wife.

Ejectment to recover twenty-four lots of land in the City of Elizabeth, in the county of Union. Issue having been joined, and the cause set down for trial, the parties agreed upon the following statement of facts, on which the case was afterwards argued before the court at bar.

This suit is brought to recover possession of twenty-four lots of land, in the City of Elizabeth, known as lots Nos. 1 to 24, both inclusive, on Block No. 34, as marked on a map of the new manufacturing town of Elizabeth Port, New Jersey.

At the date of the demise laid in the declaration, George Whitsell and John Atbridge occupied a portion of said premises, as tenants of John M. Fulton and Susan his wife, or as tenants of the wife alone.

The deed for the premises in question was given to Susan Fulton, the wife of John M. Fulton, and the estate thus held is a chattel real, being the unexpired portion of a term of thirty years, for which said premises had been legally sold for the nonpayment of taxes, by virtue of an act of the legislature, entitled " an act to make taxes a lien upon real estate in the township of Elizabeth, in the county of Essex, and to authorize the sale of the same for the payment thereof," approved February 11th, 1847.

In 1849, and before the said sale, the fee of the premises in question was in one Charles D. Robinson, and the term now held by Susan Fulton was created by a public sale of said premises, made by William Condell, a constable of the

township of Elizabeth, by virtue of a tax warrant to Augustus Kellogg who became by said sale the purchaser of a term of thirty years (30) in said lots, in consideration of his paying the taxes assessed against them for which they were sold, and also the costs, fees, charges, and expenses attending the sale of said lots.

The term or estate thus created, was conveyed to said Augustus Kellogg by the deed of said William Condell, constable, bearing date March 15th, 1857, and was recorded in the clerk's office of the county of Essex, in Book O 7 of Deeds for said county, in page 343, and the sale to him by said Condell was regular and legal in form and substance. .

By deed, dated September 26th, 1853, and recorded, February 1st, 1858, in the clerk's office of Union county, in Book No. 2 of Deeds, in pages 512, &c., the said Augustus Kellogg conveyed all his right, interest, and estate in said premises to Susan Fulton, wife of John M. Fulton, defendant in this suit, for the consideration of one hundred and fifty dollars. There was a written agreement, between Augustus Kellogg and John M. Fulton, respecting the purchase of Kellogg's interest and estate in the premises in question, signed by said Kellogg.

Since the conveyance to Mrs. Fulton, three buildings (residences) have been erected on said lot.

The consideration for the lots, and for the improvements subsequently put upon them, was furnished mainly from the proceeds of the labor and industry of Susan Fulton and her daughters (under twenty-one years of age), in connection with hired girls and apprentices; but, from 1858 to 1860, John M. Fulton assisted at the business in which his wife and daughters were engaged, which was manufacturing, and giving out to manufacture articles of clothing, chiefly vests; but, previously to 1858, his only connection with the business was in going to and from New York, bringing out and returning the work manufactured by his wife and daughters. From 1858 to 1860, in addition to going and returning from

Stall v. Fulton.

New York in taking charge of said work, he personally superintended the business at their place of residence in Elizabeth.

On the 19th day of July, 1859, the plaintiff recovered a judgment in the Supreme Court of New Jersey, against the said John M. Fulton, for $1217.60 debt, and $32.30 costs, founded on the record of a judgment, recovered against the said defendant by the said plaintiff, in the Supreme Court of the State of New York, in the county of Duchess, June 19th, 1857, which said last named judgment was founded on a contract made prior to the purchase of the aforesaid lots.

By virtue of an execution, duly and regularly issued and recorded upon the first named judgment, the sheriff of the county of Union levied upon, advertised, and on the 24th day of August, 1860, sold at sheriff's sale, the estate and interest of John M. Fulton in the said premises to Herman Stall, the plaintiff in this suit, for the consideration of $49; and a deed for the estate and interest of said John M. Fulton, dated August 24th, 1860, was by the said sheriff delivered to said Herman Stall, on the 31st day of August, 1860, and duly recorded in the clerk's office of Union county, in Book 7 of Deeds, pages 95, &c., on the 7th day of September, 1860.

If, upon the whole case, the Supreme Court think that judgment should be entered for the plaintiff, then it is agreed that judgment shall be entered for the plaintiff, and if for the defendants, then judgment shall be entered for the defendants.

WILLIAM F. DAY, *att'y of defendants.*
E. W. RUNYON, *att'y of plaintiff.*


For plaintiff, *M. Beasley.*

The premises in dispute were conveyed to Mr. Fulton by deed, dated September 26th, 1853, and recorded 1st July, 1858. One Augustus Kellogg made the conveyance, by virtue of an article of an agreement with Mr. F., the husband. The consideration of the lots, and the improvements subse-

quently put upon them, was mainly the labor of wife and her infant daughters.

The plaintiff claims under sheriff's deed of 31st August, 1860, by virtue of a judgment against Fulton, the husband, obtained in the Supreme Court, 19th July, 1859. This judgment was founded on a judgment in New York, obtained 19th June, 1857, and which was upon a contract made prior to the purchase of the lots.

The subject matter of dispute is the term of years, which is a chattel real.

I. Chattels real vest in the husband. *Clancey's Husb. and Wife* 2; 2 *Kent's Com.* 134.

Husband may bar the interest of wife by assignment, with or without consideration. *Clancey* 104.

They have this peculiarity—they do not admit or stand in need of being reduced into possession; they are already in possession. *Ibid.* 104.

At common law, the property was liable to execution against husband. The only question is, is the property protected under our statute respecting the property of married women. *Nix. Dig.* 503, acts of 1852.

II. What is the construction of the act?

Its design is to protect the property of married women. It is not to enable them to take property, which before the passage of the act the law prevented them from holding.

It is a remedial statute. The old law permitted the husband and his creditors to take the property of the wife. This was the evil; the remedy is to protect that property for her.

III. This statute can have no application to this case.

The attempt here is to secure the property of the husband to the use of the wife.

The act secures hers—this application would secure his.

This term is the husband's property.

Every dollar which went to pay for the land and for the buildings was his.

The earnings of the wife belong to him absolutely.

The statute has not altered the law in this respect. *Clancey's Husb. and Wife* 3 ; 1 *Parsons on Cont.* 286.

They must be sued for in the name of husband alone. *Ibid.*

So completely are her earnings his property, that he cannot give them to her as against creditors. 2 *Story's Eq. Jurisp.*, § 1387.

At the time of the gift in this case, this debt had been incurred.

A debt is void as against existing debts at time of gift. 1 *Am. Lead. Cas.* 40, *Sexton* v. *Wheaton.*

The same construction is given in Mississippi. 30 *Miss.* 589, *Sharp* v. *Maxwell;* 27 *Miss.* 830, *Henderson* v. *Warmach.*

For defendant, *B. Williamson.*

The opinion of the court was delivered by

VREDENBURGH, J. This ejectment is brought to recover possession of 24 lots in the City of Elizabeth. The plaintiff claims title, by virtue of a judgment, on a cause of action arising before the deed to Mrs. Fulton, herein after mentioned, against the husband, and a deed under such judgment, dated the 31st of August, 1860. This (the defendants being in possession), *prima facie,* entitles the plaintiff to recover.

The wife sets up, by way of defence, a deed to her from the former owner, dated the 26th of September, 1853, for a term of thirty years. But at the common law this would vest in the husband during their joint lives, and thus far be liable for his debts. *Clancey's Husb. and Wife* 9, 10.

But the wife, in further defence, sets up the act of the legislature, passed on the 25th of March, 1852, *Nix. Dig.* 503.* The deed to the wife is dated a year after this act went into effect, and while she was a married woman. It is therefore affected by its provisions. The 3d section of this act provides, " that it shall be lawful for any married female to receive, by gift, grant, devise, or bequest, and hold to her

*Rev., p. 636.*

sole and separate use, as if she were a single female, real and personal property, and the rents, issues, and profits thereof; and the same shall not be subject to the disposal of her husband, nor be liable for his debts."

It was decided by this court, in the case of *Ross* v. *Adams,* 4 *Dutcher* 160, that the term grant, in the act, included this species of conveyance. This case, then, is that of a married woman receiving a term of years by grant, and the statute says, in terms, that it shall not be liable for her husband's debts.

This, therefore, is a complete defence, unless the plaintiff can show that it is outside of the provisions of this statute. The plaintiff attempts to do so, by alleging that this term of years was paid for with the husband's money, and that on that account the statute does not operate on the grant, and that the title passes through the wife to the husband the same as it would at common law, and as if this statute had never been passed.

In the first place—suppose the wife did pay for this land with the money of her husband, so as to defraud his creditors, how does it affect the question at law? Can the plaintiff maintain ejectment, or is his remedy in a court of equity? By the common law, the title flows from the vendor to the wife, and through her to her husband. The husband gets no title from the vendor. All the title he gets is what flows through the wife to him.

The statute does not prevent the title passing from the vendor to the wife: the whole title passes out of the vendor into the wife, the same as if no statute had been passed. The statute only operates on the title when it reaches the wife. It then immediately attaches to the title in the wife's hands, and stops its further passage. The channel by which it passed at common law from the wife to the husband is hermetically sealed by the statute. The statute says the wife may receive and hold it to her separate use as a single female; and that it shall not be subject to the disposal of her husband, nor be liable for his debts. The channel

through which, therefore, the plaintiff claims that the husband got his title, is blocked up by the statute. It could get no further than the wife.

The common law, under which a joint estate for life in chattels real of the wife were vested in the husband, was repealed by the statute. The title therefore passed from the vendor to the wife by virtue of the deed, and the statute prevents it going any further.

Nor can the fact of the wife's paying for the land with the funds of her husband make any difference as to the legal title. The only remedy of the creditors is in equity. At most they can hold only an equitable title. We have been referred to some cases in Pennsylvania, where ejectments have been sustained for chattels real bought by the wife with the husband's money; but these were under their local practice—they having no Court of Chancery; and ejectment is there used in the nature of a bill in equity to execute a trust.

But suppose we are wrong in this, it remains to be considered whether the case here shows that this term of years was in point of fact bought with the husband's money. Upon the face of the deed it appears to have been bought with the money of the wife, and not of the husband.

It is said, in reply, that at law, when a deed is made to a married woman, the presumption, *prima facie*, is that it was bought with the funds of the husband. This doctrine would disturb a great deal of property in New Jersey. It is the constant habit to make deeds and all kinds of securities to married women, paid for by funds they have earned or received from kindred, and which have remained thus in their own names all the rest of their lives. In all such cases can a creditor sell under a judgment against the husband, bring ejectment against the wife's heirs, and say that the presumption is that the lands were bought with the husband's money, and put them to the proof, in the first instance, that it was not, or turn them out of possession by ejectment?

We are referred to several cases in Pennsylvania where the court use very strong and general words to that effect.

Such are the cases of *Keeney* v. *Good*, 9 *Harris* 354; *Brad-ford's appeal*, 5 *Casey* 513; *Gamber* v. *Gamber*, 6 *Harris* 366; *Toply* v. *Toply*, 7 *Casey* 328; and of *Aubles* v. *Mason*, 11 *Casey* 261. But these are all cases where the other facts in evidence show very plainly, that the funds were in fact the husband's, and not the wife's, and the expressions of the court should be read in the light of all the facts appearing in each case.

The presumption upon the face of the deed is, that the term of years was bought with the funds of the wife, and the burthen of overcoming this presumption is upon the plaintiff.

The question before us therefore is, whether the plaintiff has shown, by his case, that this money was her husband's. He has shown us, in the state of the case, the facts connected with these funds, and insists that, in point of law, they were the husband's. These facts are, that the consideration of the deed to the wife was $150; that this $150 was the pro-ceeds of the labor and industry of his wife and minor daugh-ters in manufacturing vests, and that his only connection with the business was in going to and from New York, bringing out and returning the work manufactured by his wife and daughters. Now does this statement show that the consideration of this deed to the wife was the property of the husband? It appears to me, so far from doing so, that it shows the reverse, and that this consideration was the property of the wife, or of the wife and daughters jointly.

The plaintiff contends that these facts show that the pro-ceeds of this labor of the wife and daughters were the prop-erty of the husband. This raises two questions.

*First.* To whom were the promises made to pay for this work? Did those in New York, for whom these vests were made, promise to pay the husband or the wife for it? If they promised to pay the wife, whose property were the earnings—the husband's or the wife's?

It appears, by the case, that the labor done by the wife and daughters was the making up of vests for people in New York, from stuff sent by them to the wife and daughters in

Elizabeth. The persons who owned the stuff must have agreed to pay somebody for the work; they must have agreed to pay either the husband or the wife. In the absence of all proof, the presumption of law would probably be that they agreed to pay the husband. But here is a *case.* Whom does the *case* show they must have agreed to pay? The case says, that the work was done by the wife and daughters for the persons who owned the materials in New York. It further says, that the husband *had no connection with the business, except* in going to and from New York, bringing out and returning the work manufactured by his wife and daughters. The case therefore shows upon its face expressly, *that the husband had nothing to do with the agreement to pay for the labor, express or implied;* that no promise was made by those who got the work done to pay *him.* This the case could not have said if the promise had been, either express or implied, to pay the husband. His going to and from New York with the articles manufactured, no more implies a promise to pay *him,* than it does to pay the baggage wagon or the railroad car in which they are carried. The case therefore negatives any promise, express or implied, to pay the husband. We must necessarily imply, from the case, that the owners of the raw material expressly promised to pay those who did the work, *viz.* the wife and daughters. We can therefore only understand the case as averring, that those who got these vests made undertook expressly to pay the wife and daughters for them.

This brings us to the second question, *viz.* If the promises of the owners of the raw material were to pay the wife and daughters for this work, whose property were these earnings at the date of the deed? Were they the husband's or the wife's?

The plaintiff contends that they were the husband's and refers us for authority to the general principle laid down in *Clancey's Husband and Wife, p.* 3, "that the husband is entitled to all sums of money which the wife earns by her skill and labor absolutely and in his own right." But the author

is here speaking only of those earnings which have been made upon express or implied assumpsits to the husband, and is not speaking of express assumpsits to the wife. This author himself, on the following pages, most emphatically negatives any such conclusion to be drawn from his general language, and states clearly, as the result of the authorities, that the right of the husband to the earnings of the wife, upon express assumpsits to pay her, are only conditional, and that they belong to the wife until the husband reduces them into possession, and if he dies first, that they survive to the wife.

It is a principle of the common law, established in the earliest times, and kept up by a uniform current of decisions to the present, and recognized in all the elementary writers, that the right of the husband in the earnings of the wife, upon express assumpsit to pay *her*, is only conditional, and the right to such earnings remains in the wife until the husband reduces them actually into possession ; that the earnings of the wife, after express promises to pay her, are choses in action—as much so as a bond or note of hand given to her during her coverture, and her property until reduced into the possession of the husband. Why not? They are the proceeds of the sweat of her own brow, and hers by a more sacred law than what descends from father or mother. Why not hers? As each day's toil is over, she has a right of action to enforce its payment against him who promises to pay her, as much as if he had given her for it a promissory note.

As the wife did each job of work, the debt due her from her employer was a chose in action belong to her, and which remained in her until her husband saw fit to reduce it into his own possession. That the earnings of the wife, upon express assumpsits to her, belong to her until the husband reduces them into possession, is supported by the most ample authority. *Clancey's Husband and Wife*, 3, 4, 5, and 6 ; *Brashford* v. *Buckingham*, Cro. Jac. 77—205 ; *Prat et ux.* v. *Taylor*, Cro. Eliz. 61 ; *Weller* v. *Baker*, 2 *Wilson* 414 ; *Buckley* v. *Collier*, 1 *Salk.* 114 ; *Fountain and Wife* v. *Smith*, 2 *Sid.*

Stall v. Fulton.

128; *Bac. Ab., Baron and Feme, R.,* § 20, 21; *Vin. Ab., Baron and Feme, T.,* § 32.

The next question is—did the husband reduce these choses in action of the wife's into his possession before this deed was made to the wife?

They existed originally in the shape of choses in action, that is, in the shape of express promises to pay the wife for her work. There is no proof in the case that the husband ever did, or intended to reduce them into possession. On the contrary, the case expressly negatives that idea. Whether the husband reduced them into possession, was a fact that should have been directly found for the plaintiff: it was a fact upon which his title rested. The presumption is, that these earnings remained in their original shape of choses in action. The case says the lands were paid for from the proceeds of the wife's labor. These proceeds were promises to pay her, and which we are to presume, from the case, were turned over to her vendor without ever passing through or under the control of the husband.

It is a well settled principle of law, that where the husband does not reduce the choses in action of his wife into his actual possession, by collecting or disposing of them, and does not act *with intent* to reduce them into his actual possession, their payment, even to the wife, with intent to reinvest them, will not vest the right to them in the husband. Whether they vest in the husband or not upon payment, even to the wife, depends upon the intent with which the payment is made. 18 *Ohio* 115;* 3 *How. U. S.* 624;† 12 *Smed. & M.* 369;‡ 3 *Kelly* (*G*) 550;§ 37 *N. Hamp.* 146,‖ 437; 22 *N. Hamp.* 352;¶ 6 *Mees. & Welsby* 423;** 28 *Vermont* 765;†† 30 *Vermont* 213;‡‡ 32 *Vermont* 27.§§

The case here shows no fact or intent by the husband to make such a conversion, but every presumption is against it. It

---

* *Dixon's Adm'r* v. *Dixon.*  † *Price* v. *Sessions.*  ‡ *Comstock* v. *Rayford.* § *Sayre* v. *Flournoy.*  ‖ *Hall* v. *Young.*  ¶ *Coffin* v. *Morril.*  ** *Gaters, Ex'r,* v. *Madeley.*  †† *Heirs of Holmes* v. *Adm'r of Holmes.*  ‡‡ *Stearns* v. *Adm'r of Stearns.*  §§ *Richardson's Adm'r* v *Merrill.*

appears, by the case, that these earnings remained in the shape of choses in action of the wife; of promises to pay her until these choses were passed over by her to her vendor in payment of this deed, and were, when so used, the property of the wife, and not of the husband. He had not yet done what it was necessary for him to do before any right to them vested in him. He had not yet performed the condition precedent upon which his rihgt to these earnings depended. He had not reduced them into his own possession. This term of years, then, was bought with her own property, which under the statute she had a right to receive by grant; and the title to this term of years passed by the deed to her, and the statute stopped any portion of the title from passing through her to her husband.

Nor is there any law, human or Divine, that compels the husband, in the interest of his creditors, to convert to their use the daily labor of his wife, or to convict him of fraud towards them, if he permits her to toil at the wash-tub or the sewing machine to feed her own children, or to provide a shelter for her little ones from the night and the tempest. He may do so, if he chooses, but the law compels him not. If it did—if the law compelled the husband, for the benefit of creditors, to snatch the loaf of bread, the proceeds of her daily toil, as she is carrying it to her children, then, indeed, should mankind blush in the presence of the rest of the animal creation. The fishhawk does not rob his mate, as she carries in her talons to her nest the prey she has plunged beneath the ocean wave to seize. Throughout all the orders of animated nature, it is the prerogative of the female to labor for her young—the human male alone is brute enough to plunder her.

Judgment for defendants.

CITED in *Peterson and wife* v. *Mulford*, 7 *Vroom* 487, 488; *Quidort's Adm'r* v. *Pergeaux*, 3 *C. E. Gr.* 479.